J-A07012-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JAMES CHRISTOPHER WALTHALL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARA MICHELLE WALTHALL | : | No. 1144 MDA 2025 |

Appeal from the Order Entered August 11, 2025
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-22-05901


BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: JULY 17, 2026**

James Christopher Walthall ("Husband") appeals *pro se* from the order granting the petition filed by Cara Michelle Walthall ("Wife") to enforce their post-nuptial agreement ("PNA").  We affirm.

The trial court provided the following background:

In September of 2022, Husband filed for divorce.  Attorney Anne Gibson filed her entry of appearance on behalf of Husband on November 7, 2022, [but withdrew her appearance in the custody matter in 2023, and] did not represent Husband in later proceedings related to the enforcement of the PNA.  Attorney Gibson later withdrew her appearance [as to the divorce matter] after Husband filed his appeal.  The parties executed their [PNA] on February 27, 2025.  At that time, Husband was not represented by counsel, and Wife was advised by Attorney Lisa J. McCoy. Within the PNA, the parties acknowledged that the agreement was "based upon their independent discussions and agreement" and that Attorney McCoy was "merely acting as the scrivener of the agreement the parties negotiated."    Among other acknowledgments, the parties agreed that they each had "sufficient opportunity to consult with their own independent counsel" and that each was "knowingly and voluntarily entering

into this Agreement." Husband and Wife further acknowledged that the PNA was "fair, reasonable, and equitable to both parties[,]" that it was being entered into "freely and voluntarily" and that it was not the result of any "duress or undue influence." On March 11, 2025, their divorce decree was entered.

On June 20, 2025, Wife, through her counsel, Attorney Brandon Lee, filed a petition to enforce the terms of the parties' PNA. Husband proceeded *pro se*, filing an emergency motion to stay enforcement of the proceedings and [an] objection to a power of attorney provision on June 25, 2025. After a Family Business Court presentation on June 26, 2025, the trial court entered a rule requesting Husband show cause why the PNA should not be enforced and scheduled a hearing on the rule for August 7, 2025. During the hearing, Husband essentially argued that he was under duress when he signed the agreement and, due to his mental health conditions, "was not in the right frame of mind to fully understand the long-term consequences of the agreement." [Of particular relevance, the trial court sustained Wife's objection to Husband's attempt to introduce inadmissible hearsay regarding his mental health diagnoses at the hearing.] Husband also pointed to Wife's refusal to accept his negotiation proposals as a source of his duress. Following the hearing, the court entered an order requiring Husband to sign a proposed support order that conformed to the provisions of the PNA within [ten] days, to secure a life insurance policy and notify Wife of such policy in conformity with the executed PNA, and to arrange for and cause the title to his 2015 Mazda CX-9 to be transferred to Wife's name within [ten] days. Husband now appeals from this order and the trial court's denial of his motion for reconsideration and emergency stay of enforcement of support order, filed Aug[ust] 11, 2025.

Trial Court Opinion, 10/3/25, at 2-3 (cleaned up).

Husband has sought stays of both the court's order enforcing the PNA during the pendency of this appeal, as well as contempt proceedings that were initiated after this appeal was filed. Both the trial court and this Court have denied those repeated requests. Husband served the trial court with his concise statement pursuant to Pa.R.A.P. 1925(b), and the court authored a

responsive opinion.[1]  In his brief, Husband presents the following issues for our consideration, which we have reordered for ease of disposition:

1. Did the trial court improperly award attorney's fees absent any documentation, testimony, or supporting findings?

2. Did the trial court violate [Husband]'s due process rights by excluding medical and psychiatric evidence offered under Pa.R.E. 803(4), 803(6), and 902(11)?

3. Did the trial court commit reversible error by enforcing a postnuptial agreement executed without independent legal counsel and under coercive circumstances?

4. Did the trial court abuse its discretion by adopting [Wife]'s proposed order, disregarding transcript objections, and failing to evaluate [Husband]'s evidentiary motions?

5. Does the scheduling of contempt proceedings while appeal and judicial recusal are pending violate Pa.R.A.P. 1701, procedural fairness, and constitutional protections?

_____

[1] On September 9, 2025, the trial court ordered Husband to file a statement pursuant to Pa.R.A.P. 1925(b) within twenty-one days of the order, which it calculated as being by September 30, 2025.  Husband purportedly served the court with his concise statement, but did not timely file it.  Indeed, we cannot locate this statement in the certified record.  In its Rule 1925(a) opinion, the court found waiver based upon Husband only serving the statement and not properly filing it, but also alternatively addressed the merits of the claims raised in the statement he served upon the court.  While not condoning Husband's failure to file his statement in accordance with the mandates of Rule 1925, we observe that the court's order also was non-compliant.  Specifically, because the order was not entered until September 11, 2025, it only gave Husband nineteen days to comply before the September 30 deadline.  *See* Pa.R.A.P. 1925(b)(2)(i) ("The judge shall allow the appellant at least 21 days from the date of the order's entry on the docket for the filing and service of the Statement.").  In light of this deficiency in the order, and the fact that the trial court had the opportunity to address Husband's claims in its Rule 1925(a) opinion, we decline to apply Rule 1925(b) waiver against Husband.

Husband's brief at 7-8.[2]

Insofar as Husband challenges Wife's oral request for attorneys' fees, *see* Husband's brief at 30-34, he waived any such challenge by failing to object to the fee request at the hearing. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Indeed, not only did Husband not object, but he stipulated to the amount Wife was billed. **See** N.T. Hearing, 8/7/25, at 44-45. Furthermore, the court did not award attorneys' fees, and therefore his claim lacks any factual basis. **See** Order, 8/11/25 (crossing out Wife's request for attorneys' fees). Accordingly, we will not entertain Husband's arguments concerning attorneys' fees any further.

We thus turn to the remainder of his issues, which we review mindful of the following legal tenets. First, both "premarital and post-nuptial agreements are contracts and are governed by contract law." **Est. of Renwick v. Renwick**, 248 A.3d 577, 580 (Pa.Super. 2021) (cleaned up). Furthermore:

---

[2] We note that Husband's brief runs afoul of our Rules of Appellate Procedure. In derogation of Pa.R.A.P. 2111, Husband failed to append his Rule 1925(b) statement. Additionally, he divides the argument section of his brief into sixteen primary issues, many of which are then broken down into several sub-issues as well, despite only raising five issues in his statement of questions. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). While we decline to quash Husband's appeal because his non-compliance has not substantially hindered our review, **see Luffy v. Zeli**, ___ A.3d ___, 2026 WL 1719401, at *4 (Pa.Super. 2026), we will address only those issues implicated by his statement of questions. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

A court's order upholding the agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review. An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. We will not usurp the trial court's fact finding function.

***Stackhouse v. Zaretsky***, 900 A.2d 383, 386 (Pa.Super. 2006) (cleaned up).

Indeed, "absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." ***Id***. (cleaned up). Finally, "contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." ***Simeone v. Simeone***, 581 A.2d 162, 165 (Pa. 1990) (cleaned up).

Husband avers that the court erred in excluding certain documents regarding his mental health diagnoses at the hearing. ***See*** Husband's brief at 12. He argues that Wife's "counsel objected to the records as hearsay without addressing their admissibility under the business records or medical treatment exceptions[,]" and the court sustained the objection without addressing those exceptions or allowing Husband "the opportunity to authenticate or lay [a] foundation." ***Id***. at 13; ***see also id***. at 67-68. Husband insists that he was structurally excluded from preserving these issues and had no opportunity to present a hearsay exception because the court told him, "I don't need that" and "I don't have your filings."[3] ***Id***. at 64 (citing N.T. Hearing, 8/7/25, at 8). In his reply brief, he asserts for the first time that the documents did not

---

[3] As will be discussed *infra*, this is not an accurate representation of what the court said.

constitute hearsay because they were not offered for their underlying truth, but rather "for non-hearsay purposes – including state of mind, notice, duress, and context." Husband's reply brief at 20 (pagination supplied).

We review the admissibility of evidence pursuant to these well-established principles:

> Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present.
>
> An abuse of discretion requires more than finding an error of judgment or that this Court would have ruled differently; instead, discretion is abused if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record.

***Hagelauer v. Main Line Emergency Med. Assocs., LLC***, 339 A.3d 483, 487 (Pa.Super. 2025) (cleaned up). We have explained that "hearsay is a statement the declarant does not make while testifying at the current trial or hearing that is offered in evidence to prove the truth of the matter asserted. Statements that meet this definition are not admissible, unless the proffered statement falls within an established hearsay exception." ***Id***. at 488 (cleaned up).

In its Rule 1925(a) opinion, the trial court thoroughly explained why the proffered evidence did not fit within an exception to the rule against hearsay. ***See*** Trial Court Opinion, 10/3/25, at 11-15. Alternatively, it provided that even if it erred in ruling against its admissibility, such error would be harmless because "the court did in fact consider Husband's mental health when

assessing his allegation of duress, which is precisely what Husband's psychiatrist requested in his letter." *Id*. at 16 (cleaned up).

As noted above, Husband ascribes certain comments to the trial court regarding Husband's attempt to offer his mental health exhibits. However, our review of the record reveals that those statements are either absent from the record or taken out of context. By way of background, the hearing began with Husband arguing that he signed the PNA "under extremely difficult personal and emotional circumstances" while "struggling with serious mental health challenges." N.T. Hearing, 8/7/25, at 9. When he referenced his medical documents, the court interjected to inform Husband that no such documents had yet been given to the court and that he needed to provide them in order for the court to be able to consider them. *Id*. at 11. After Husband offered a letter from his psychiatrist and documentation from the Department of Veterans Affairs, Wife's counsel objected on hearsay grounds. *Id*. at 11-13. The court advised Husband that "absent some hearsay exception, they're inadmissible hearsay." *Id*. at 13. In light of Husband's response that he did not understand, the court elaborated on the importance of cross-examination and why hearsay is generally inadmissible. Husband claimed that he was willing to be cross-examined about the medical documents but did not put forth any argument that the records he sought to admit were either not hearsay or subject to an exception.

Based on the foregoing, we conclude that Husband waived his challenge to the court's hearsay ruling by failing to make any hearsay argument in

support of the admissibility of the requested documents at the time of the hearing.[4] ***See Hagelauer***, 339 A.3d at 491 (finding waiver where the appellant did not present the grounds for admissibility of hearsay evidence raised on appeal at trial); ***see also*** Pa.R.A.P. 302(a).

Husband next challenges the court's order enforcing the PNA. ***See*** Husband's brief at 20. He claims his mental health diagnoses were "wholly inconsistent with contractual capacity." ***Id***. at 22. Husband emphasizes the disparities in bargaining power between the parties, which he claims the court failed to consider. Specifically: "The [PNA] divested [Husband] of access to marital equity, imposed postdivorce financial obligations, and granted disproportionate benefit to [Wife]. [Husband] had no legal advice and was threatened with forfeiture if he refused to sign. [Wife], in contrast, was represented, housed, and financially stable." ***Id***. at 24. He maintains that the court was required to examine the execution of the PNA "to ensure [that] it was not the product of coercion, disparity, or a lack of informed consent. The context here was profoundly one-sided economically, procedurally, and emotionally." ***Id***. at 69. In his summation: "Husband was unrepresented,

---

[4] While we recognize that his *pro se* status may have contributed to him misunderstanding the pertinent legal precepts and failing to preserve this issue for appeal, it has long been the case that "*pro se* status confers no special benefit . . . . To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." ***Wilkins v. Marsico***, 903 A.2d 1281, 1285 (Pa.Super. 2006) (cleaned up). We decline Husband's invitation to revisit our precedent to no longer require *pro se* litigants to be held to the same evidentiary burdens. ***See*** Husband's brief at 59-60.

financially constrained, and vulnerable. The [PNA] contains contradictory language referring to Lisa McCoy both as [Wife's] 'scrivener' and as her legal counsel. There is no evidence that [Husband] was advised to seek counsel, nor that he had the means or capacity to do so." *Id*. at 70. Overall, Husband complains that the court made no findings and simply enforced the PNA with an "order [that] was adopted wholesale from opposing counsel." *Id*. at 62.

We have explained that "because settlement agreements are presumed valid and binding, the party seeking to avoid or nullify the agreement has the burden of proving the invalidity of the agreement by clear and convincing evidence." *Lewis v. Lewis*, 234 A.3d 706, 714 (Pa.Super. 2020) (cleaned up). Presently, Husband invoked duress as a defense to enforcement of the PNA. Duress has been defined thusly:

> That degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness. The quality of firmness is assumed to exist in every person competent to contract, unless it appears that by reason of old age or other sufficient cause he is weak or infirm. Where persons deal with each other on equal terms and at arm's length, there is a presumption that the person alleging duress possesses ordinary firmness. Moreover, in the absence of threats of actual bodily harm there can be no duress where the contracting party is free to consult with counsel.

*Id*. at 715 (cleaned up). "Whether the facts found by the trial court constitute duress as a matter of law is a purely legal question for which our scope of review is plenary, and our standard of review is *de novo*." *Id*. (cleaned up).

In its Rule 1925(a) opinion, the court detailed Husband's claims that he suffered from mental health challenges and was under other stressors at the time he signed the PNA. *See* Trial Court Opinion, 10/3/25, at 8. The court noted that while Husband emphasized Wife's inflexibility in negotiating the terms of the PNA, "at no time did Husband indicate that she threatened him with physical force or abuse if he would not sign the PNA." *Id*. Similarly, Husband did not aver that she ever "made threats that would keep him from consulting with counsel regarding the agreement." *Id*. Furthermore, the court concluded that Wife did not misrepresent her financial position. *Id*. at 9. The court summarized its findings as follows:

> Husband's regret at having entered a bad bargain is not sufficient reason to invalidate the agreement, and along with it the long-standing principle that parties are free to contract without the interference of the court.
>
> The record clearly demonstrates that Husband failed to present any evidence of fraud, misrepresentation, or duress. Rather, Husband merely attempted to advance the argument that Wife's tough negotiating stance and his relative lack of bargaining leverage in the divorce amounted to duress. In considering all the evidence presented at the hearing, the trial court reasonably concluded that Husband did not meet his burden to set aside the agreement and, thus, ordered Husband to comply with the terms of the PNA.

*Id*. at 9-10 (cleaned up).

Our review of the record confirms the court's conclusions. It is clear from the PNA that Husband had the opportunity to consult with independent counsel but chose not to, that the role of Wife's attorney was adequately

explained to him, and that the parties negotiated the terms of the agreement themselves:

    25. **Voluntary Execution**: The provisions of this Agreement and their legal effect have been fully explained to the parties. Wife has had the advice and counsel of Lisa J. McCoy, Esquire. Husband chose not to consult with counsel prior to signing this Agreement. Each party acknowledges that this Agreement is fair and equitable, that it is being entered into voluntarily, and that it is not the result of any duress or undue influence.

    **Husband and Wife each acknowledge that the Agreement is based upon their independent discussions and agreement, that Attorney Lisa J. McCoy is merely acting as the scrivener of the agreement that the parties negotiated. Husband and Wife acknowledge that they each fully understand and voluntarily agree to the terms of this Agreement. Husband and Wife further acknowledge that they had sufficient opportunity to consult with their own independent counsel prior to the execution of this Agreement if they desired to do so, and each acknowledges that they are knowingly and voluntarily entering into this Agreement.** . . .

    Prior to the execution of the within Agreement, Husband acknowledges that he has had the opportunity to consult with separate counsel and inquire about his rights under the Pennsylvania Divorce Code, as amended, prior to the execution of this Agreement, and he chose not to do so. Husband is further satisfied that this Agreement adequately protects his rights as set forth in the Pennsylvania Divorce Code, as amended. . . .

    . . . Husband has voluntarily elected to enter into this Agreement, which he recognizes and agrees will fully and finally resolve all rights that he has or could have under the Pennsylvania Divorce Code, as amended, subject to the provision of this Agreement. Finally, Husband agrees that he will not challenge the validity of this Agreement based upon the fact that he has voluntarily chosen not to retain an attorney and/or consult with his attorney.

    . . . .

Both Husband and Wife agree and acknowledge the following:

- This Agreement is fair, reasonable, and equitable to both parties.

- This Agreement is being entered into freely and voluntarily.

- This Agreement is not the result of any duress or undue influence.

- This Agreement is not the result of any collusion or illegal or improper agreements.

- The parties further acknowledge and agree that each has had full, proper, and independent representation and/or the right and opportunity to retain legal representation prior to the execution of this Agreement.

PNA, 2/27/25, at ¶ 25 (emphasis in original).

At the hearing, Husband did not allege that Wife prevented him from consulting with counsel. Rather, he emphasized that he could not afford counsel, was emotionally and mentally vulnerable, and that the terms of the PNA were unjust. *See* N.T. Hearing, 8/7/25, at 9, 16, 20-21. As he described it, Wife exploited Husband's difficulties by presenting him with a "take it or leave it" proposal on "her terms" if he wanted "access to [his] equity to try to be able to get [his] financial affairs in order[.]" *Id*. at 16; *see also id*. at 21 ("It was you're going to do this my way or you're not getting access to your equity and that's it.").

At bottom, Husband argued that the PNA should not be enforced "because [he] was not in the right state of mind and [he] felt pressured and [he] felt coerced and taken advantage of, that if [he] wanted the money,

[he's] going to sign. . . . And the legal and financial complexities of that contract [he] could not adequately comprehend at the time[.]" *Id*. at 21. In other words, Husband "felt that [he] had no choice" if he wanted access to the equity. *Id*. at 16. It was not until several months later, after changing his medication and moving past other stressful events, that he purportedly realized the PNA was "incredibly imbalanced." *Id*. at 17. In his estimation, enforcing the PNA would result in his financial ruin and return to homelessness. *Id*. at 23.

While Husband claims that his ability to understand the long-term consequences of the PNA were impacted by his mental health conditions, he also recognized that he did not obtain counsel because he could not afford an attorney, that he entered into the agreement in order to obtain equity from the home, and that Wife refused to capitulate to the terms he had proposed to go along with obtaining that equity. Stated differently, Husband had the opportunity to consult with counsel and did not. Furthermore, he knew he was entering into a bargain on terms less favorable to him than he had hoped for in order to obtain something he wanted, though he may not have appreciated at that time just how unfavorable those terms were. This does not amount to duress. *See Lewis*, 234 A.3d at 715 (noting that "in the absence of threats of actual bodily harm there can be no duress where the contracting party is free to consult with counsel" (cleaned up)).

Furthermore, contrary to Husband's contentions otherwise, *see* Husband's brief at 62-63, the record bears out that the court permitted

Husband to testify fully at the hearing, ruled upon the admissibility of evidence, and did not cut the hearing short. Additionally, we detect no error with the court utilizing the proposed order from Wife in granting her petition to enforce the PNA. Far from simply rubberstamping her proposed order, the court made several modifications including, as noted above, the complete removal of an attorneys' fees award. Based on the foregoing, we discern no abuse of discretion in the court's decision to enforce the PNA.

Lastly, Husband challenges various proceedings in the trial court that post-date the filing of the instant notice of appeal as violative of Pa.R.A.P. 1701 and his rights to due process. He then purports to argue the underlying merits of those proceedings. **See** Husband's brief at 34-44. Specifically, he attacks the contempt proceedings for his failure to abide by the terms of the PNA as retaliatory and mooted by his late compliance. **Id**. at 35-44, 46-48, 54-59. Husband also assails the court's failure to rule upon his post-appeal motion to recuse in the contempt proceedings and contends that the court acted with bias and without integrity throughout its handling of this case. **Id**. at 36-37, 48-52; Husband's reply brief at 22-25 (pagination supplied). Finally, he condemns the court's decision not to stay the contempt proceedings or enforcement of the PNA, asking us to hold that "once an appeal is docketed, enforcement must pause unless specifically permitted by rule or motion[,]" thereby "bar[ring] contempt proceedings for compliance related obligations in support orders." Husband's brief at 62.

This we will not do. Rule 1701 provides, in pertinent part:

**(b) Authority of a trial court or other government unit after appeal.**--After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:

(1) Take such action as may be necessary to preserve the *status quo*, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed, and transmitted, grant leave to appeal *in forma pauperis*, grant *supersedeas*, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.

(2) Enforce any order entered in the matter, unless the effect of the order has been superseded as prescribed in this chapter.

Pa.R.A.P. 1701.

Here, the court denied Husband's request to stay the proceedings, and was therefore authorized, notwithstanding the instant appeal, to enforce the PNA and entertain Wife's petition for contempt based upon his non-compliance with the terms of the PNA. We note that this Court likewise denied Husband's repeated requests for emergency stays of the enforcement order appealed from. *See* Order 9/22/25 (denying application for emergency relief); Order 10/28/25 (denying motion for reconsideration); Order, 1/7/26 (denying motion regarding contempt proceedings and stay request); Order 1/16/26 (denying two additional emergency applications and directing the Prothonotary "to accept no further [a]pplications from [Husband]"). Moreover, as the contempt and recusal matters post-date the order appealed from, their underlying merits are not before this Court in this appeal, and we therefore will not undertake any such review.

Overall, Husband has presented no argument that would entitle him to the relief he seeks.  Accordingly, we affirm the order enforcing the PNA.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>07/17/2026</u>